**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MICHAEL LEWIS**,

        **Petitioner,**

   **v.**                                 **Civil action no. 1:09cv32
Criminal action no. 1:05cr108-1
(Judge Bailey)**

**UNITED STATES OF AMERICA,**

        **Respondent.**

## REPORT AND RECOMMENDATION

### I.  Introduction

On February 17, 2009, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.  (Dkt.# 105), along with a motion for an extension of time in which to file a Memorandum of Law in Support.  (Dkt.# 108).  Petitioner filed a second motion for an extension of time in which to file a Memorandum of Law in Support of his  § 2255 motion on February 25, 2009. (Dkt.# 112).[1]  Petitioner finally filed his memorandum in support on March 6, 2009.  (Dkt.# 115).   The Government filed its response on May 4, 2009.  (Dkt.# 120).[2]  Petitioner filed a reply to the Government's response on June 4, 2009. (Dkt.# 128).

### II.  Procedural History

**A.**      **Conviction and Sentence**

---

[1] The requested extension of time was granted by Order entered on February 26, 2009.  (Dkt.# 114).

[2] The Government also requested an extension of time for its response (Dkt.# 117); that request was granted by Order entered on April 27, 2009. (Dkt.# 118).

On October 17, 2005 the Government filed a Criminal Complaint alleging that petitioner had knowingly conspired to possess with the intent to distribute over 5 grams of crack cocaine, in violation of 21 U.S.C. § 841(a) and § 841(b)(1)(B). (1:05cr104 at Dkt.# 1, 1:05mj50 at Dkt.# 1). Petitioner was arrested on October 18, 2005, and subsequently entered into plea negotiations with the Government. He signed a plea agreement on November 3, 2005. On November 9, 2005, an Information was filed, charging him with the offense, pursuant to the signed plea agreement. (1:05cr104 at Dkt.# 23). On November 22, 2005, petitioner appeared before the Court for a waiver of indictment and Rule 11 hearing, where he informed the Court that he had changed his mind, did not intend to waive the indictment and did not intend to enter a guilty plea.. (1:05cr104 at Dkt.# 27).[3] The case was continued generally.

On December 6, 2005 petitioner was indicted in four counts of a four-count indictment with a forfeiture allegation. (1:05cr108 at Dkt.# 1). Approximately one month later, on February 10, 2006 petitioner signed another plea agreement, agreeing to plead guilty to Count One of the four-count indictment, conspiracy to distribute in excess of 50 grams of crack cocaine, in violation of Title 21, United States Code, §§ 841 (a)(1), 841(b)(1)(A)(iii) and 846. Nonetheless, at a plea hearing on the same day, petitioner again changed his mind,[4] withdrawing from the plea agreement and stating his intention to go to trial. (Dkt.#90 at 66 and Dkt.# 48). Accordingly, the plea hearing

---

[3] The criminal case 1:05mj50-1JSK-1, 1:05cr104 was later closed and the present criminal case, 1:05cr108-1 was opened.

[4] During the plea hearing, the Government presented the testimony of Officer Raymond Fluharty of the Three Rivers Drug Task Force in Fairmont, WV, to establish a factual basis for the plea. (Dkt.# 90 at 41 - 66). After the Government presented the factual basis of the plea, the petitioner conferred with his counsel and then counsel advised the Court that petitioner did not wish to go forward with the plea. A long discussion was then had between petitioner, his counsel, the AUSA, and the witness about the scope of the evidence against petitioner. Petitioner indicated that he was worried about spending the rest of his life in prison and he felt that he was in a "no win" situation. The Court reminded him that his prior criminal history had a lot to do with the potential sentence he was facing and the petitioner said "I understand." Id. at 64 - 65.

was converted into a final pretrial conference,[5] with trial scheduled for February 21, 2006. (Dkt.# 90 at 67 and 72).

On February 21, 2006, the morning of the scheduled trial, just prior to jury selection, petitioner changed his mind again, and instead pled guilty to each of the four counts in the indictment without the benefit of a plea agreement. (Id. at 81- 82, and 89 - 92).

Petitioner, then twenty-seven years old and possessing a tenth grade education,[6] denied being on any medication of any type before entering his pleas in open court. (Id. at 74). During the plea hearing, the Court read aloud in open court each Count of the indictment, advising the petitioner what the maximum and minimum period of imprisonment, period of supervised release and fine was for each Count. The Court explained the forfeiture allegation to which petitioner was pleading. For each Count and for the forfeiture allegation, when the Court specifically asked petitioner whether he understood the charge and its potential penalty, petitioner answered in the affirmative. (Id. at 75 - 80). Petitioner stated that he understood that Count One had a mandatory minimum sentence of ten years and a statutory maximum sentence of life imprisonment and a five-year period of supervised release. (Id. at 79). Petitioner indicated that he understood that he would be required to pay a

_____

[5] After the plea hearing was turned into a final pretrial conference the Court addressed petitioner's motion to suppress the evidence seized as a result of search warrants authorizing searches of: the rooms petitioner had access to at the Belmont Motor Inn; the 1997 Chevrolet Cavalier; and the storage unit in Akron Ohio where a large amount of money and drugs were found. The Court heard argument from counsel and then denied petitioner's motion to suppress, ruling that all the evidence petitioner was objecting to would be admissible at trial. (Dkt.# 90 at 72).

[6] Petitioner's accounts of his education vary: at his second aborted plea hearing on February 10, 2006, he stated he had gone to the eleventh grade. (Dkt.# 90 at 4). On February 21, 2006, at the plea hearing the morning trial was to have started, he reported having gone as far as the tenth grade. (Id. at 74). In his sworn affidavit attached as Exhibit C to the memorandum of law in support of his § 2255 motion, he states ". . . I only completed the 9th grade." (Dkt.# 115, at 29, Exh. C). An April 16, 2008 *pro se* filing by petitioner states that he suffered a head injury in the fifth grade; failed the seventh grade twice and the ninth grade three times, but that since being sentenced, he had earned his GED within five months; began a Microsoft computer course; and had enrolled in college classes offered at the prison which were expected to begin in May 2008, with the intention of earning an associate's degree in business technology. (Dkt.# 105 at 11 - 12).

mandatory one hundred dollar per-count special assessment for each charge, for a total special assessment of four hundred dollars. (<u>Id</u>. at 79 - 80).

The Court advised petitioner that since there was no plea agreement, that he was pleading to the indictment and therefore his sentencing would be based on whatever his relevant conduct was based on the charges, and any other activity related to the conspiracy, including whatever the probation officer calculated as his prior criminal history. Petitioner said that he understood. (<u>Id</u>. at 81). The Court reminded petitioner that he was exposed to a potential Career Offender enhancement to his sentence, and asked petitioner if he understood what that meant, and the petitioner said that he did. (<u>Id</u>. at 81 and 83).

The Court explained to petitioner that he had retained some of his appellate rights and advised petitioner on the limitations thereto; petitioner indicated that he understood. (<u>Id</u>. at 83). Further, the Court reminded petitioner that if the sentence he ultimately received was greater than what he had hoped for, he would still be bound by his plea and would not be able to withdraw it; petitioner indicated that he understood that fact. (<u>Id</u>. at 85). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (<u>Id</u>. at 85 - 87 and 89).

The Court then questioned petitioner in depth and at great length about the voluntariness of his plea. The Court inquired specifically as to what had made him change his mind about going to trial. Petitioner admitted that he had only just changed his mind that morning, after reviewing all the evidence and the witnesses to be presented at trial. (<u>Id</u>. at 88). When questioned further, petitioner denied that he felt he was being pushed into entering his pleas, and stated that he had had adequate time to discuss the change in strategy with counsel. (<u>Id</u>.) Defense counsel affirmed to the Court that they were satisfied that petitioner understood what he was about to do. (<u>Id</u>.) The Court

then read aloud in open court each Count from the indictment and the petitioner entered his plea to each, stating for each Count that he had, in fact, committed the offense. (Id. at 89 - 92).

The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 93). In addition, he testified that the plea was not the result of any promises made to him other than the statutory maximum sentences already explained by the Court. (Id.). The petitioner testified that his attorneys Zimarowski and Ballard had adequately represented him, that his attorneys had left nothing undone, and that he had had the counsel of both of them. (Id. at 94). Upon questioning, defense counsel advised the Court that they had been unable to find any defense to the charges. (Id.).

At the conclusion of the hearing, the Court determined that: the plea was made freely and voluntarily; the petitioner was competent to make the pleas; petitioner understood the consequences of pleading guilty; and that the elements of the crime were established beyond a reasonable doubt. (Id. at 95). Further, the Court found that petitioner was aware of the consequences of his pleas and what the statutory maximum sentences for each were. (Id.). The petitioner did not object to the Court's finding. The Court then explained to petitioner that his probation officer would be preparing a Pre-Sentence Investigation Report ("PSR") over the next several months, compiling information on his prior criminal history and "everything else we can find out about you" in order to consider what his proper sentence should be, and that if petitioner were cooperative and gave full and truthful information, he could earn a two-level reduction for acceptance of responsibility. Petitioner indicated that he understood. (Id. at 96 - 97).

Almost two and a half months later, on June 1, 2006, petitioner filed a *pro se* motion to withdraw his guilty plea, alleging various instances of ineffective assistance of counsel, stating that

had it not been for counsel's errors, he would not have pled guilty and would have insisted on going to trial. (Dkt.# 74).

Approximately one week later, on June 9, 2006, the petitioner appeared before the Court for sentencing. Before beginning, the Court advised petitioner that he was under oath, and that the penalty for offering false testimony would be a charge of perjury; petitioner indicated that he understood. (Id. at 101).

The Court then addressed petitioner's recently-filed *pro se* motion to withdraw his guilty plea,[7] which alleged numerous instances of alleged ineffective assistance of counsel.[8] The Court heard extensive testimony on the motion, including testimony from the Government's witness, Officer Fluharty, on the issue of a search that petitioner alleged was performed without a warrant. Petitioner himself cross-examined the officer. The Court then heard testimony from the petitioner, who alleged, *inter alia*, that he had only pled guilty because his attorneys "made him lie" and coerced his plea by telling him that he was a career offender who would be subject to a life sentence if he went to trial and was convicted on any count. (Id. at 128 - 130 and 181 - 183). Petitioner claimed he was entrapped on the night he was arrested. (Id. at 142 - 14). Petitioner further testified

---

[7] Defense counsel advised the Court that petitioner first indicated he wanted to withdraw his plea when he initially saw the PSR for the first time and met with counsel to draft objections to it. Counsel informed him at that time that they would file the objections to the PSR for him, but advised him that since withdrawing the guilty plea was not in his best interest, if he were determined to do it, he should do it *pro se*.

[8] Petitioner alleged that counsel: (1) failed to show him two videos of controlled buys that led to his arrest; (2) improperly advised him that he was a "career offender;" (3) failed to file a motion to suppress evidence regarding an alleged warrantless search and seizure of his cell phone; (4) failed to advise him of specific defenses, including the defense of entrapment; (5) failed to suppress taped phone conversations he had while at the North Central regional jail; (6) failed to challenge the validity of the informant who assisted in his arrest; (7) failed to argue the possibility that his arrest was incident to racial profiling; (8) failed to advise him that he had been indicted in Akron, Ohio for the drugs and money found in the storage locker there; and (9) failed to challenge any improper behavior by Officer Fluharty in lying to the Akron Police Department to obtain a search warrant for the storage facility in Akron Ohio.

that his attorneys told him he should plead guilty because "the judge was mad at him" for backing out of his two prior plea hearings. (Id.). Petitioner contended that he was actually innocent of the charges. (Id. at 139 - 140). At the beginning of the very lengthy hearing, and repeatedly throughout it, the Court reminded petitioner that he was under oath and admonished him as to the penalties for perjury and obstruction of justice. (Id. at 100, 110, and 137 - 138). Finally, testimony was also placed on the record from defense counsel to rebut petitioner's allegations of ineffective assistance. (Id. at 163 - 171).

Ultimately, the Court ruled that petitioner had not shown a "fair and just reason" for withdrawing his plea, pursuant to the six factors set forth in Fed. R. Crim. P. 11(d)(2)(B), and its balancing test, set forth in U.S. v. Love, 2006 U.S. App. LEXIS 5321, 5322 (4th Cir. 2006). The Court opined that "there is absolutely no credible evidence that you did not know what you were doing [when you entered your plea] and . . . I find as a fact that the plea was knowing and voluntary."[9] (Id. at 187). The Court further held that "there is no evidence of conduct by the attorneys that's in any way egregious or questionable."[10]

After determining that petitioner's plea was final and binding, the Court found that petitioner

---

[9] The Court further advised petitioner that "[y]ou have not credibly asserted a thing there this afternoon, Mr. Lewis. Your testimony has been untruthful in almost every single respect, but at least in every material respect and you are, in my opinion, a liar, who has come before this Court under oath and proffered testimony that is patently untrue. . . And I find as fact that it is your testimony with regard to your drug dealing and the validity of the factual facts [sic] surrounding the validity of the search warrant that is untrue and that you are a liar from the first words out of your mouth to the last words out of your mouth and there is absolutely no evidence whatsoever that you are credible in any respect. Moreover, you asserted under the circumstances of your plea hearing, which may be the only credible evidence in this case, that you were guilty, not innocent and even today when I have asked you, are you innocent, you had a hard time even saying it but eventually you did say it because apparently you must have figured that was the thing to do. You are guilty and the evidence is overwhelming as to your guilt on the four counts when the record in this case is thoroughly reviewed." (Id. at 190 - 191).

[10] The Court commented that if petitioner had not seen the DVD and videotape of the controlled buys, his choice not to view them was his own decision, as his attorney offered to show them to him but he declined.

had a base offense level of 34. (Id. at 198). With a *sua sponte* two-level enhancement pursuant to § 3C1.1 for obstruction of justice, for lying to the Court by providing false testimony about a material matter, petitioner's adjusted offense level was 36. The Court declined petitioner's request for a two-level reduction for acceptance of responsibility under § 3E1.1. Petitioner's Criminal History Category was VI. The Court found that the sentence guideline range was 324 to 405 months imprisonment. (Id. at 207). Neither the Government nor the petitioner objected to the Court's tentative findings. (Id. at 208). The Court offered petitioner an opportunity to allocute but he refused it. (Id. at 208 - 209). Finally, defense counsel declined to make a statement on petitioner's behalf regarding the statutory factors under § 3553(a). (Id. at 209).

The Court then addressed the § 3553(a) statutory factors as they applied to petitioner, as well as the objections to the PSR. The Government's one objection, regarding presenting testimony relevant to petitioner's historical deliveries of crack cocaine, was withdrawn in an effort to avoid double-counting. (Id. at 199 - 202). Petitioner's first objection, that his relevant conduct calculation should be reduced by 293.5 grams (180.5 storage locker drugs plus 113 storage locker cash conversion to drugs), since those amounts had already been taken into consideration by Ohio state authorities in the case pending against him there, was overruled because he had not been convicted of those charges and because of the Ohio authorities' stated intent to dismiss those charges once petitioner was sentenced on the instant federal charges. (Id. at 205). Petitioner's second objection, that a criminal history point was wrongfully awarded for a 2001 possession of stolen goods conviction (charges petitioner contended were dismissed), was overruled because the probation officer provided the court with a certified copy of the Judgment Order for that conviction. (Dkt.# 96-2 at 23). Petitioner's third objection, that a variant sentence was warranted due to his lack

of guidance as a youth and his drug and alcohol addiction was overruled as not being relevant grounds for departure. (Id. at 210). His fourth objection, that a variant or non-guideline sentence should be awarded "due to his extraordinary cooperation with authorities," was likewise overruled, because petitioner had denied all responsibility for any of the drugs attributed to him at the sentencing hearing.[11] (Id. at 211).

The Court found that petitioner did not qualify for a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a) since his testimony at his sentencing hearing was completely inconsistent with his testimony at his February 21, 2006 Rule 11 hearing, and also inconsistent with the version of the offense he submitted to the Probation Officer for inclusion within his PSR. Likewise, the Court found that petitioner should receive a two-level enhancement pursuant to U.S.S.G. §3C1.1 for obstruction of justice. (Id. at 210 - 214).

After considering several factors, including the circumstances of the crime; the defendant's extensive prior criminal history; his uncooperative and untruthful behavior at his sentencing hearing; as well as the sentencing objectives of punishment, the Court sentenced the petitioner at the highest end of the guideline range. Petitioner was sentenced to a term of 405 months imprisonment on Count One and Count Three, and a sentence of 240 months as to Counts Two and Four, all to run concurrently; payment of a special assessment of $400 but no fine, and five years of post-incarceration supervised release.

**B.      Direct Appeal**

Petitioner, through counsel, filed a notice of appeal to the Fourth Circuit Court of Appeals

---

[11] Regarding petitioner's request for a non guideline sentence for his "extraordinary cooperation with authorities," the Court commented "I think it is beyond peradventure today that that is - - was probably an aspirational objection at the time but it did not actually become a reality is probably the best way to put that." Dkt.# 90 at 211.

on June 12, 2006. (Dkt.# 78). As grounds for his appeal, the petitioner asserted the following:

(1)     the District Court abused its discretion in denying petitioner's motion to withdraw his guilty plea; and

(2)     the District Court improperly participated in plea negotiations.

Petitioner also filed a motion to file a *pro se* supplemental appellate brief which the Fourth Circuit Court of Appeals refused to consider since it was not accompanied by the proposed brief. (4th Cir. Dkt. # 47) (06 - 4633). Petitioner was advised that he could file a renewed motion to file the pro se supplemental brief within fourteen days if it was accompanied by the brief. On March 12, 2007, petitioner filed his renewed motion, accompanied by the supplemental brief. (4th Cir. Dkt. # 50) (06 - 4633). On August 3, 2007, in a *per curiam* unpublished opinion, the Fourth Circuit Court of Appeals affirmed petitioner's conviction (Dkt.# 97) and denied his motion to file the supplemental brief. Appellate counsel filed a motion for rehearing and rehearing *en banc* (4th Cir. Dkt. # 74) (06 - 4633) on August 16, 2007, which was denied on September 18, 2007 (4th Cir. Dkt.# 80) (06 - 4633). Mandate issued on July 31, 2008. (Dkt.# 99).

Petitioner filed a petition for writ of *certiorari* with the U.S. Supreme Court which was denied on February 19, 2008. (4th Cir. Dkt.# 104) (06 - 4633).

**C.     Other Collateral Proceedings**

On April 16, 2008, petitioner filed a *pro se* Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense pursuant to 18 U.S.C. § 3582. (Dkt.# 105). Counsel was appointed. On May 22, 2009, through counsel, petitioner filed a Motion for Reduced Sentence Pursuant to 18 U.S.C.§ 3582. (Dkt.# 122), and on June 1, 2009, an Amended Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense 18 U.S.C.§ 3582. On June 2, 2009,

petitioner's motion for a reduced sentence pursuant to 18 U.S.C.§ 3582 was granted (Dkt.# 126), reducing his sentence from 405 months to 327 months.  Id.

## D.    **Federal Habeas Corpus**

**Petitioners' Contentions (Dkt.# 107 and #115)**

In his federal habeas petition and its later-submitted memorandum in law in support, petitioner raises multiple grounds for relief, including several ineffective assistance of counsel claims, re-ordered here for the sake of clarity:

(1)    at a pre-indictment proceeding,[12]  attorney Kornbrath was ineffective for failing to accept the Government's offer to remove the drug quantity stipulation from the plea agreement then being offered, because counsel erroneously believed  petitioner's status as career criminal under   § 4B1.1 made the offer irrelevant, since his base offense level would have been the same either way;

(2)    attorney Zimarowski was ineffective for inducing petitioner's guilty plea by erroneously advising petitioner that he was a § 4B1.1 career criminal facing a statutory minimum sentence of life imprisonment if he were convicted of any count at trial;

(3)    whether petitioner's guilty plea could be considered knowing, intelligent, and voluntary, since petitioner only entered it based on erroneous advice by counsel about his possible status as a § 4B1.1 career criminal;

(4)    attorney Zimarowski was ineffective for refusing to file a motion to withdraw guilty plea on petitioner's behalf once he realized that petitioner was not a § 4B1.1 career criminal;

(5)    during a hearing[13] on petitioner's *pro se* motion to withdraw his guilty plea, both of petitioner's counsel were ineffective, since they had a conflict of interest: one assumed a  non-advocacy role and the other, an adversarial role toward petitioner, effectively leaving him without counsel at a critical stage in his criminal proceedings, a violation of his Sixth Amendment right to counsel;

---

[12] The first page of petitioner's memorandum incorrectly states that this erroneous advice was provided to petitioner at sentencing.

[13] The *pro se* motion to withdraw the guilty plea was heard at the sentencing hearing on June 9, 2006.

(6)      whether petitioner knowingly, intelligently and voluntarily waived his right to counsel by proceeding *pro se* at a critical stage of his criminal proceedings: the hearing on his *pro se* motion to withdraw his guilty plea; and

(7)      appellate counsel was ineffective for failing to challenge the validity of petitioner's guilty plea.

## Government's Response (Dkt.# 120)

In its response, the government answers the petitioner's claims as follows:[14]

(1)      Petitioner's claim that attorney Kornbrath was ineffective for dismissing the Government's offer to remove the drug quantity stipulation from the plea agreement because he believed that petitioner's extensive criminal history made the stipulation irrelevant fails. Petitioner cannot show prejudice from counsel's educated miscalculation. Petitioner's claim that he would have accepted the original plea had he not been misinformed about his career offender status is disproven by the record: petitioner originally signed a plea agreement even with the understanding that the career offender provision might "kick in" and apply to him. He signed anyway; he later denied the plea and ultimately pled to the less favorable indictment, still with the understanding that the career offender status might apply to him. Clearly petitioner denied the original plea for other reasons than counsel's misinformation. Further, since it was ultimately determined that petitioner's sentencing level was in fact 34, neither the presence nor the absence of the stipulation affected petitioner's Guideline range. Nor was petitioner prejudiced by losing a two-level reduction and receiving a two-level increase by his failure to plead earlier; petitioner received those sentencing Guideline enhancements because of his own misbehavior,[15] not because of any alleged ineffective assistance by counsel.

(2)      Petitioner's claim that "but for" counsel's ineffectiveness in inducing his guilty plea by erroneously advising him of his § 4B1.1 career criminal status, he would have gone to trial, also fails. First, on two occasions where he was to enter a guilty plea, against the advice of counsel he decided *against* it. On the morning of trial he advised his counsel that he wanted to plead to all counts of the indictment. Petitioner's claim that counsel coerced or induced his plea by telling him the Court was angry with him or that he would get a life sentence otherwise is unsupported by the record. Finally, merely because counsel and the Government originally believed that petitioner's criminal history might compel the finding of career offender status with a harsher sentence, and counsel so advised petitioner, does not render counsel's assistance

---

[14] The Government's responses are likewise re-ordered for clarity and consistency.

[15] Petitioner lost the opportunity for a two-level reduction for acceptance of responsibility and received a two-level increase for obstruction of justice for perjury.

ineffective. To the contrary; the Court noted at his sentencing hearing that had counsel not so advised him (of the possibility of a career offender status finding) then counsel "would have been ineffective." It was counsel's job to advise petitioner of his risks and options, and as the Court noted, petitioner "received patient, thorough and wise counsel from . . . [his] attorneys."

(3)     Petitioner's pleas were knowing and voluntary, as evidenced by his testimony at his Rule 11 hearing.

(4)     Petitioner contends that attorney Zimarowski was ineffective when he refused to file and argue his motion. However, Counsel did consult with petitioner and objected to those issues in his PSR that counsel believed were legally supported. Further, the issue of the guilty plea, when raised on appeal, was upheld, indicating that counsel exercised good legal judgment in not challenging it. A defendant has no absolute right to withdraw a guilty plea. The district court properly determined whether petitioner had a fair and just reason for withdrawing his plea, using the factors set forth in U.S. v. Moore, 931 F.3d 245, 248 (4th Cir. 1991). Petitioner's claim that having to proceed *pro se* on his motion to withdraw his guilty plea prejudiced him, because it resulted in a two-level increase for obstruction of justice for perjury has no merit. Petitioner's perjury was not caused by lack of representation at the plea withdrawal hearing. His perjury had already occurred when he pled guilty at the Rule 11 hearing. Since he claimed actual innocence at his plea withdrawal hearing, there was no escape without perjuring himself, because he had already testified under oath at the plea hearing that he had in fact, actually committed the crimes. Therefore, in withdrawing the plea, irrespective of whether it was done with or without counsels' assistance, he was committing perjury. Furthermore, the Court gave him fair warning during the plea withdrawal hearing, regarding the possibility of an obstruction of justice enhancement for perjury.

(5)     Petitioner's claim that counsel failed to represent him on his plea withdrawal motion, a critical stage in his proceedings, violated his Sixth Amendment right to counsel. The Government concedes that a plea withdrawal hearing may be a critical stage in criminal proceedings. However, the Government contends that only in cases where the deprivation of the right to counsel affects and contaminates the entire criminal proceeding, should reversal be automatic. Otherwise, a harmless error analysis applies. Petitioner was well-represented at all other stages of his criminal proceedings and testified at his plea hearing he was satisfied with counsel. Counsels' failure to represent him on his motion to withdraw did not 'affect and contaminate' the proceedings such that any more than a harmless error review is required.

(6)     Petitioner's claim that his decision to proceed *pro se* on his motion to withdraw the guilty plea, effectively waiving his right to counsel, was not knowing, intelligent or voluntary, since he was on medication which affected him from voluntarily denying counsel, should be dismissed. Petitioner did not attempt to have other counsel

appointed when his own attorneys advised him that if he chose to withdraw his pleas, he would have to do so without their assistance. Further, he did not inform the Court that he was on medication, nor did he exhibit any behavior to indicate that his actions were not voluntary. To the contrary, he cross-examined the police officer, testified and addressed the Court directly. He has produced no evidence to show that his waiver of counsel was anything but voluntary.

(7)     Petitioner's claim that appellate counsel was ineffective for not challenging the validity of his guilty plea is procedurally barred. Appellate counsel *did* raise the issue of the motion to withdraw the guilty plea on appeal, claiming that it was a result of ineffective assistance of counsel. However, the Fourth Circuit rejected the claim and affirmed his convictions.

**Petitioner's Reply (Dkt.# 128)**

In his reply, the petitioner reiterates and expands on the issues raised in his original petition,

reordered here for clarity, as follows:

(1)     the Government's response concedes that attorney Kornbrath's performance (in failing to advise him to accept the Government's offer to remove the drug quantity stipulation and to accurately apprise himself of petitioner's § 4B1.1 career criminal status) was deficient; to the extent the Government did not so concede, it is incorrect.

Attorney Kornbrath was deficient for not being aware that petitioner was not a § 4B1.1 career criminal. Had he known petitioner was not a § 4B1.1 career criminal, counsel undoubtedly would have advised petitioner to accept the revised plea offer. Proof that petitioner was prejudiced by this erroneous advice is contained in overwhelming evidence provided by the aborted November 22, 2005 plea hearing transcript and the affidavit attached to petitioner's § 2255 motion. Although petitioner concedes that he did ultimately plead guilty (to the indictment) even with the understanding that § 4B1.1 might apply, the primary reason he did so was because attorney Zimarowski told him he would face a mandatory life sentence if he were convicted of any count at trial. Further, the fact that his sentencing level was 34 is irrelevant because the question to be answered was whether he "would have accepted the revised plea offer which would have allowed him to argue his drug quantity before the sentencing court, which did not happen at his sentencing hearing because he was denied counsel at that hearing." [sic].

Finally, petitioner denies that he claimed prejudice from losing the two-level reduction pursuant to § 3E1, and the two-level enhancement pursuant to § 3C1.1; the Government "simply made this fact up."

(2)     The Government's response concedes the performance prong[16] of petitioner's ineffective assistance of counsel claim for inducing petitioner to enter a guilty plea based on the erroneous belief that he was a § 4B1.1 career criminal, because its argument only addresses the prejudice prong. Petitioner concedes that the evidence against him was overwhelming, but reiterates that since counsel erroneously told him he faced a mandatory life sentence under 21 U.S.C. § 851 if he were convicted of any count at trial; it was the fear of a mandatory life sentence, not the overwhelming evidence, that caused petitioner to accept the plea.

(3)     The guilty plea was not knowing, voluntary and intelligent, because it was only made based on the erroneous advice by counsel about the § 4B1.1 career criminal status.

(4)     Petitioner refutes the Government's position that attorney Zimarowsi was not ineffective for refusing to file a motion to withdraw petitioner's guilty plea once he realized he had given incorrect advice. Petitioner contends that there was a fair and just reason for withdrawing the plea. Even if the erroneous advice regarding § 4B1.1 career criminal status did not provide a fair and just reason, then the erroneous advice regarding the 21 U.S.C. § 851 enhancement should have, since it rendered the guilty plea itself unknowing, involuntary and unintelligent. Further, since counsel's erroneous advice was given outside of the Rule 11 hearing, nothing the Court stated during the Rule 11 could remedy it.

(5)     Petitioner agrees that the Government concedes that he was denied counsel during a critical stage of his criminal proceeding (the combined withdrawal of guilty plea/sentencing hearing) [sic] but disagrees that the denial was harmless and contends that the harmless error analysis does not apply, because the resultant Sixth Amendment violation affected and contaminated the entire proceeding.

(6)     Petitioner did not waive his right to counsel at the plea withdrawal hearing and it is the Government's burden to prove "an intentional relinquishment or abandonment of a known right or privilege."

(7)     The Government's claim that petitioner already raised the issue of whether appellate counsel was ineffective for not challenging the validity of his guilty plea is incorrect. Petitioner's claim on appeal was that the district court erred in denying his *pro se* motion to withdraw his guilty plea.

Finally, petitioner contends that "to the extent that the record does not refute . . . [his] factual

claims, the Government has conceded those facts because it has not refuted or denied any of them."

---

[16] Presumably petitioner is referring to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

# III. ANALYSIS

## A.    Burden of Proof

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

## B.    Procedurally Barred Claims

Before evaluating the merits of petitioner's claims, the Court must determine which of petitioner's issues he may bring in his § 2255 motion and which are procedurally barred.

It is well settled that non-constitutional issues that could have been raised on direct appeal but were not may not be raised in a collateral attack such as a § 2255 motion. (emphasis added) Sunal v. Large, 332 U.S. 174, 178-79 (1947); Bousley v. United States, 523 U.S. 614 (1998).

Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. (emphasis added) United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994).

"[A] final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Therefore, the failure to raise a claim on direct appeal may result in a

procedural default barring collateral review.  Bousley v. United States, 523 U.S. 614 (1998).

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."  United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999).  "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel."  Id.

In establishing "prejudice," the petitioner must show the error worked to his "actual and substantial disadvantage," rather than merely created a possibility of prejudice.  See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).  In the alternative to establishing "cause" and "prejudice," the petitioner may demonstrate "actual innocence," or that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him."  Bousley v. United States, 523 U.S. 614, 621 (1998).  "In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence."  Mikalajunas, 186 F.3d at 493.  "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted;  this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent."  Id. at 494.  The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him."  Schlup v. Delo, 513 U.S. 298 (1995).  Should a petitioner prove actual innocence,  the court should issue a writ of habeas corpus to prevent a

"miscarriage of justice," regardless of whether the issue was procedurally defaulted. Hurdle v. United States, 2007 U.S. Dist. LEXIS 37709, at *6-7 (E.D. Va. May 22, 2007) (relying on Schlup v. Delo, 513 U.S. 298 (1995). Finally, issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976).

In this case, petitioner's Ground Two claim that attorney Zimarowski was ineffective[17] for inducing his guilty plea through erroneous advice about his potential status as a § 4B1.1 career offender; his Ground Three claim that his guilty plea cannot be considered knowing, intelligent, and voluntary, since it was entered based on erroneous advice by counsel about his possible status as a § 4B1.1 career criminal; his Ground Four claim that attorney Zimarowski was ineffective for not filing a motion to withdraw his guilty plea once he realized petitioner was not a § 4B1.1 career criminal; his Ground Five claim that his attorneys were ineffective for not representing him at his plea withdrawal hearing since they had a conflict of interest, in violation of his Sixth Amendment right to counsel at a critical stage in his criminal proceedings; and his Ground Seven claim that appellate counsel was ineffective for not challenging the validity of his guilty plea on appeal are all procedurally barred, because they were raised and rejected as being without merit by the Fourth Circuit Court of Appeals. Issues already raised and decided on direct appeal cannot therefore be

---

[17] Although claims of ineffective assistance of counsel are generally not cognizable on direct appeal, an exception to this general rule applies when the record conclusively establishes ineffective assistance of counsel. United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Here, the entire sum and substance of petitioner's 22-page appellate brief alleged numerous instances of ineffective assistance of counsel in the circumstances surrounding the ineffective assistance provided by: allegedly erroneous advice provided to petitioner regarding his potential exposure to a life sentence as a § 4B1.1 career criminal, the aborted Rule 11 hearings, the ultimate entry of petitioner's guilty plea, and finally culminating in the ineffective assistance regarding the motion for withdrawal of the plea and counsels' alleged abandonment of petitioner by counsel at the plea withdrawal hearing. The Fourth Circuit's review of the record apparently rejected any finding of ineffectiveness by counsel since it summarily rejected all of petitioner's arguments, commenting not only that there was no error in the Rule 11 hearing but also that "we have reviewed the briefs and record and find no reversible error."
.

reconsidered, absent a showing of a change in the law.  <u>Davis v. United States</u>, 417 U.S. 333 (1974);

<u>Boeckenhaupt v. United States</u>, 537 F.2d 1182 (4th Cir. 1976).  Because petitioner has failed to make

the requisite showing, these claims should be denied.

Finally, petitioner's Ground Six claim, whether he knowingly, intelligently and voluntarily

waived his Sixth Amendment right to counsel by proceeding  *pro se* "at a critical stage" of his

criminal proceedings: his plea withdrawal hearing, is procedurally barred, because petitioner could

have, but did not raise it on appeal, unless the petitioner can show cause and prejudice for the default.

<u>Id</u>.

In his  memorandum in support of his petition, the petitioner in effect, asserts that "cause"

exists because trial counsel was ineffective:  attorney Zimarowski abandoned him and refused to

draft, file or argue the motion "because he thought it was a bad idea."  Petitioner further contends at

the hearing on the motion, both his attorneys, although present, constructively denied him

representation because attorney Zimarowski took "an adversarial role against" him and attorney

Ballard remained silent and refused to assist, so he was forced to proceed *pro se.*  Petitioner claims

that he was prejudiced by counsels' failure to represent him on his attempt to withdraw his plea,

insisting  that the hearing was a "critical stage" in his proceedings,[18] and that counsel "failed to

subject the prosecutions [sic] case to meaningful adversarial testing," rendering "the adversary

process itself presumptively unreliable."

Accordingly, it is necessary to review petitioner's claims to determine if any ineffectiveness

of counsel caused petitioner to forgo raising his Sixth Amendment right to counsel claim on appeal,

---

[18] Petitioner concedes that although the Fourth Circuit has not "weighed in on the question of whether a
hearing to withdraw a guilty plea constitutes a critical stage," other jurisdictions have, and he urges the Court to
adopt their reasoning.

and whether he was actually prejudiced by his failure to do so.

## C.     Ineffective Assistance of Counsel

**Ground Six - Whether Petitioner Knowingly, Intelligently and Voluntarily Waived his Sixth Amendment Right to Counsel by Proceeding *Pro Se* at the Plea Withdrawal Hearing, a Critical Stage of his Criminal Proceedings**.

Petitioner contends that his decision to proceed *pro se* in arguing his motion to withdraw his guilty plea, a "critical stage" in his criminal proceedings, effectively waiving his Sixth Amendment right to counsel, could not be considered knowing, intelligent or voluntary, since his decision-making ability "may have been compromised" by Wellbutrin, an antidepressant drug he was taking at the time. Petitioner also cites his then-9[th] grade education, unsophistication, lack of training in the law, and "several traumatic head injuries" he suffered "as a young man" as further contributing factors to his inability to voluntarily make the important decision to waive counsel. Petitioner contends that he was forced into arguing his motion *pro se* because his two attorneys had a conflict of interest and abandoned him.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

A Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Here, petitioner entered his pleas to the charges almost two and a half months before the combined plea withdrawal/sentencing hearing. He had been represented by counsel throughout the entire proceedings. He had already been convicted.[19] Although the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence [sic]," that right has since been construed as the right to counsel a "critical stages" of criminal proceedings. The Supreme Court long ago recognized that the period from arraignment to trial was "perhaps the most critical period of the proceedings" during which the accused "requires the guiding hand of counsel" if the guarantee is not to prove an empty right." <u>U.S. v. Wade</u>, 388 U.S. 218, 87 S. Ct. 1926, 19 L. Ed. 2d 1149 (1967) *quoting* <u>Powell v. Alabama</u>, 287 U.S. 45, 57 and 69, 53 S. Ct. 55, 77 L. Ed.158 (1932). It is well-established that there is no constitutional right to counsel in post conviction proceedings, other than the first direct appeal of right. <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Although petitioner urges the adoption of the reasoning of other jurisdictions which have held that a plea withdrawal is a "critical stage" in criminal proceedings, that is not the holding in this jurisdiction.

Petitioner's attorneys were present at the combined plea withdrawal/sentencing hearing, and

---

[19] A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. <u>Kercheval v. United States</u>, 274 U.S. 220, 223, 47 S. Ct. 582; 71 L. Ed. 1009 (1927).

they did represent him at the sentencing portion of the hearing, presenting his objections to the PSR to the Court. Counsel informed the Court that they had advised petitioner that his decision to withdraw his pleas would not be prudent and that they did not believe it was in his best interest. Counsel informed the Court that they had further advised petitioner that if he were still determined to do it, he should do it *pro se.* (Dkt.# 90 at 102). As the Government correctly observed, a defendant does not have an absolute right to withdraw a guilty plea. U.S. v. Ewing, 957 F.2d 115, 119 (4th Cir. 1992). Pursuant to Fed. R. Crim Pro. 32(e), the District Court may permit a plea to be withdrawn upon a showing by a defendant "of any fair and just reason." The District Court appropriately considered the six factors to determine whether there was in fact a fair and just reason for petitioner to do so, set forth in U.S. v. Moore, 931 F.2d 245, 248 (4th Cir. 1991) and ruled against petitioner. The Fourth Circuit Court of Appeals also affirmed the District Court's ruling, finding no abuse of discretion in the denial of petitioner's motion to withdraw his plea. It is apparent that counsels' decision not to take part in the challenge of the guilty plea was the correct one. Petitioner's counsel cannot found ineffective for not doing something that was legally and ethically not in petitioner's best interests. Petitioner has not shown that counsel was ineffective, therefore, he has failed in his burden to demonstrates cause external to himself to excuse his procedural default for not raising his Sixth Amendment claim on appeal.[20] Furthermore, since his appeal of the District

---

[20] Neither the District Court nor the Fourth Circuit Court of Appeals found that any of petitioner's attorneys were ineffective in any respect. After petitioner had presented his argument on his motion to withdraw his guilty pleas, including his numerous complaints about his attorneys' performance and their "erroneous advice" regarding his career criminal status coercing his plea, the Court commented "You have received patient, thorough and wise counsel from your attorneys and there are two attorneys in this case that you have received counsel from currently. You had first the counsel of Mr. Kornbrath, the Federal Public Defender. . . your counsel are among the best in this District. They are experienced counsel. Ms. Ballard and Mr. Zimarowski, between the two of them, divided up the issues in the case and the tasks in the case . . . - - but both of them knew the record. And, Mr. Kornbrath negotiated the informational plea for you at the outset of this case, which you yourself chose to reject." (Dkt.# 90 at 192). The Court further commented "[n]ow, in focusing on the competency of his attorneys, there is no evidence of conduct by the attorneys that's in any way egregious or questionable." (Dkt.# 90 at 195). Further, the Court noted that

Court's denial of the motion to withdraw the plea was upheld by the Fourth Circuit on appeal, petitioner cannot show any actual prejudice resulting from the alleged error. Nor has petitioner demonstrated actual innocence or shown that a miscarriage of justice would occur if the Court refused to entertain his § 2255 motion. This claim has no merit, is procedurally barred and should be denied.

**Ground One - Whether Counsel was Ineffective for Failing to Accept the Government's Offer to Remove the Drug Quantity Stipulation from the First Plea Agreement Offered, Because Counsel Erroneously Believed that Petitioner was a Career Criminal § 4B1.1 and Thus Faced a Statutory Minimum Life Sentence if he Went to Trial and was Convicted on any Count.**

Petitioner's contends that his first attorney, Kornbrath was ineffective for failing to accept the Government's offer to remove a drug quantity stipulation from the first plea agreement petitioner signed pursuant to an Information charging him with Count One, knowingly conspiring to possess with the intent to distribute over 5 grams of crack cocaine, in violation of 21 U.S.C. § 841(a) and § 841(b)(1)(B). He states that counsel was uninformed about his true career criminal status because he had not properly researched petitioner's prior conviction history, and because of this, erroneously believed petitioner would be facing a life sentence whether the stipulation was present or not, because his base offense level would be the same (34) either way. Petitioner claims that he would have accepted the Government's revised offer if only counsel had advised him to do so. He claims prejudice, in that since he did not accept that first plea, or the later one offered, but ultimately pled to all four counts of the indictment and later perjured himself trying to withdraw that "ill-advised guilty plea," he lost a two-level reduction for acceptance of responsibility and received a two-level increase for obstructing justice by committing perjury.

This argument is unavailing. Petitioner was always faced the possibility of a maximum

---

"[c]ounsel would have been ineffective had they not advised him of the concern [of exposure to a possible life sentence as a career criminal] and the fact that it went in his favor rather than against him, I don't think, compels a decision that counsel was ineffective. Counsel was not ineffective in this case in any respect." (Id.at 197).

sentence of life on Count One, irrespective of his status as a career offender. This fact was explained

to him at his December 21, 2005 arraignment (Dkt.# 91 at 5 - 6), where he indicated his

understanding of the statutory penalties (Id. at 9) and at his two aborted Rule 11 hearings, (Dkt.# 94

at 16, Dkt.# 90 at 6).   Before he finally entered his pleas to the indictment on the morning of the

scheduled trial, the Court again carefully and accurately advised him as to the maximum and

minimum possible sentence for all four counts.   Count One, the Count he twice intended to plead to,

but twice backed out of pleading to at his two aborted Rule 11 hearings, had a maximum period of

imprisonment of life, and a minimum term of imprisonment of ten years, and petitioner was so

advised by the Court.   When asked if he understood that fact, he said "Yes."  (Dkt.# 90 at 75).   The

Court further emphasized the potential for a maximum sentence of life:

THE COURT: . . . Now, let me explain to you that by pleading to the Indictment, one charge in
particular is going to drive the length of your sentence and the amount of the fine and the amount of
your supervision.  All right?

THE DEFENDANT: Yes, ma'am.

THE COURT: And that is the first Count, which is the conspiracy count, which as I told you, alleges
a conspiracy to distribute in excess of fifty grams and that's talking about from the summer of 2003
until the date of the Indictment, which was December 6th of 2005.  So it's a mandatory minimum of
ten years, a statutory maximum of life.  There's a period of supervised release of at least five years.
Now that again is more then [sic] in the other Counts but it is what will drive the amount of your
supervision because it's required that it be at least five years.  Okay?

THE DEFENDANT: Yes, ma'am.

(Dkt.# 90 at 79).

Further, petitioner was fully advised by the Court about the possibility that his sentence might

be higher than anticipated before entering his plea:

THE COURT:  If you plead guilty, as you intend to here this morning, and the sentence you
ultimately receive from me is longer than the one that you hoped you would receive, do you
understand that you will still be bound by your plea of guilty and you can't withdraw it?

THE DEFENDANT: Yes.

(Dkt.# 90 at 85).

Petitioner subsequently entered his pleas to all four counts of the indictment. Further, at sentencing, it was determined that based upon petitioner's extensive criminal history, his base offense level was in fact 34, (Dkt.#90 at 98) as attorney Kornbrath had first advised him, indicating that counsel had researched petitioner's criminal history status. Since petitioner was exposed to a possible life sentence on Count One anyway, attorney Kornbrath's inability to know with certainty about his career criminal status at that point in the proceedings had no effect on the outcome. Petitioner's claimed prejudice, the losses of the two-level sentence reduction for acceptance of responsibility and the two-level increase for obstructing justice by committing perjury, were the result of his own poor choices, and cannot be attributed to anything attorney Kornbrath did or failed to do. Petitioner has neither shown that attorney Kornbrath's performance fell below an objective standard of reasonableness, nor has he shown prejudice, thus he has failed in his burden of proof under Strickland. This claim has no merit and should be denied.

**D. The Government's Alleged Failure to Properly Respond to the Petition**.

In his reply, the petitioner asserts a kind of "catch-all" claim that "to the extent that the record does not refute . . . [his] factual claims, the Government has conceded those facts because it has not refuted or denied any of them." Regarding petitioner's contention that the respondent either did not either address all of his claims, or that it did not dispute them, implying that it conceded some of them and therefore, presumably he is entitled to an order vacating his guilty plea and allowing him to proceed to trial, the relief requested in his § 2255 petition, Rule 5(b) of the Rules Governing Section 2255 Proceedings states: "The answer must address the allegations in the motion. In

addition, it must state whether the moving party has used any other federal remedies, including any prior post-conviction motions under these rules or any previous rules, and whether the moving party received an evidentiary hearing."

It is quite clear that Rule 5(b) does not require the respondent to respond to each and every separate claim individually. In a case such as this one, where the petitioner has filed numerous claims, largely based on the same factual premise, it is not uncommon nor unreasonable for the respondent to group certain claims together, or rely on the argument in one claim, as a basis for dismissal of another similar claim.[21] A review of the respondent's response shows that the respondent has in fact appropriately answered the allegations made in the petitioner's motion and that none of the grounds have been conceded. Furthermore, petitioner has not provide the court with any specific examples of which claims he is referring to, and therefore his claims are insufficiently pled under Fed. R. Civ. Pro. 8. Furthermore, these claims are so vague and conclusory and such, they fail to establish that petitioner is entitled to relief under the preponderance of the evidence standard. Accordingly, they should be denied.

## IV.   RECOMMENDATION

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion (Dkt.# 107) and **DISMISSING this case with prejudice.**

Therefore, Petitioner's pending May 24, 2010 Motion to Cause Magistrate Judge to Issue

---

[21] Claims made by *pro se* parties are not always easily discernable from the pleadings, as is particularly obvious from a review of the record here. Holding the respondent to a strict requirement to answer each and every claim individually and separately is not only burdensome but impractical. Quite often, it is not until after a response is filed, that a *pro se* party is able to clarify the exact basis for each of his or her claims. Just as the Court is required to liberally construe a *pro se* plaintiffs pleadings in the interests of fairness, the Court should likewise give some leeway to the respondent's interpretation of those same pleadings.

Report and Recommendation to Vacate Under 28 U.S.C. 2255 (Dkt.# 135) should be **DENIED** as moot.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: July 29, 2010

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE